UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| MARC JANSEN, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 1:19-cv-07536-NRB |
|  | : |  |
|  | : | <u>CLASS ACTION</u> |
| Plaintiff, | : |  |
|  | : | LABOURERS' PENSION FUND OF |
| vs. | : | CENTRAL AND EASTERN CANADA'S |
|  | : | OPPOSITION TO COMPETING LEAD |
| INTERNATIONAL FLAVORS & | : | PLAINTIFF MOTIONS |
| FRAGRANCES INC., ANDREAS FIBIG and | : |  |
| RICHARD A. O'LEARY, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

---

4848-8651-1787.v1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...............................................................................................1

II.   ARGUMENT .....................................................................................................3

    A.    The Israeli Investor Group Does Not Trigger the PSLRA Presumption ................3

    B.    MPERS Should Be Disqualified from Service as Lead Plaintiff for
          Violating the Five-in-Three Provision ...................................................10

    C.    Mr. Verkhovsky Has the Smallest Financial Interest and Cannot Trigger
          the Presumption ...............................................................................20

    D.    The Canadian Labourers' Pension Fund Is the Presumptive Lead Plaintiff
          Candidate .........................................................................................20

III.  CONCLUSION..................................................................................................21

4848-8651-1787.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aronson v. McKesson HBOC, Inc.*,
   79 F. Supp. 2d 1146 (N.D. Cal. 1999) .............................................................. *passim*

*Cambridge Ret. Sys. v. Mednax, Inc.*,
   2018 WL 8804814 (S.D. Fla. Dec. 6, 2018)
   *report and recommendation adopted*,
   2018 WL 6978626 (S.D. Fla. Dec. 21, 2018) ............................................10, 14, 16

*Chiaretti v. Orthodontic Ctrs. of Am., Inc.*,
   2003 U.S. Dist. LEXIS 25264 (E.D. La. Aug. 28, 2003) ............................14, 15, 17

*Craig v. CenturyLink Inc.*,
   2017 WL 4768566 (W.D. La. Oct. 20, 2017) ...................................................14

*Cunha v. Hansen Nat. Corp.*,
   2009 WL 2029797 (C.D. Cal. July 13, 2009) .................................................. *passim*

*Eichenholtz v. Verifone Holdings, Inc.*,
   2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ..............................................2, 7, 9

*Epic Sys. Corp. v. Lewis*,
   _ U.S. _, 138 S. Ct. 1612 (2018)..............................................................16

*Galmi v. Teva Pharm. Indus. Ltd.*,
   302 F. Supp. 3d 485 (D. Conn. 2017)...................................................8, 9

*Gemsco, Inc., v. Walling*,
   324 U.S. 244 (1945).............................................................................16

*IBP, Inc. v. Alvarez*,
   546 U.S. 21 (2005)...............................................................................17

*In re Able Labs. Sec. Litig.*,
   425 F. Supp. 2d 562 (D.N.J. 2006) ...........................................................5

*In re Alamosa Holdings, Inc. Sec. Litig.*,
   2004 WL 578439 (N.D. Tex. Mar. 4, 2004) ..............................................14

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ..................................................................16

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)....................................................................3

4848-8651-1787.v1

**Page**

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 1:06-cv-01825-NGG-RER (E.D.N.Y. Jan. 16, 2009) .......................................................5

*In re Critical Path, Inc. Sec. Litig.*,
    156 F. Supp. 2d 1102 (N.D. Cal. 2001) ..............................................................................19

*In re Enron Corp., Sec. Litig.*,
    206 F.R.D. 427 (S.D. Tex. 2002) ...........................................................................13, 14, 15

*In re Enzymotec Ltd. Sec. Litig.*,
    2015 WL 918535 (D.N.J. Mar. 3, 2015) ..............................................................................6

*In re Extreme Networks Inc. Sec. Litig.*,
    2016 WL 3519283 (N.D. Cal. June 28, 2016) .....................................................................17

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
    209 F.R.D. 447 (C.D. Cal. 2002) .......................................................................................19

*In re Herley Indus. Inc. Sec. Litig.*,
    2010 WL 176869 (E.D. Pa. Jan. 15, 2010) .........................................................................18

*In re Mellanox Techs., Ltd. Sec. Litig.*,
    13-cv-04909 (N.D. Cal. 2013) ............................................................................................6

*In re Network Assocs., Inc. Sec., Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ................................................................................19

*In re Petrobras Sec. Litig.*,
    104 F. Supp. 3d 618 (S.D.N.Y. 2015) ..................................................................................7

*In re Tarragon Corp. Sec. Litig.*,
    2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007) .........................................................................8

*In re Telxon Corp. Sec. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999) ...............................................................13, 15, 16, 18

*In re Unumprovident Corp. Sec. Litig.*,
    2003 U.S. Dist. LEXIS 24633 (E.D. Tenn. Nov. 6, 2003) .............................................. *passim*

*Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc.*,
    2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015) ....................................................................7, 9

*Irving Firemen's Relief and Ret. Fund v. Tesco PLC*,
    2015 WL 1345931 (S.D.N.Y. Mar. 19, 2015) .......................................................................4

- iii -

**Page**

*Kniffin v. Micron Tech., Inc.*,
   379 F. Supp. 3d 259 (S.D.N.Y. 2019) ...................................................................................9

*Knurr v. Orbital ATK, Inc.*,
   220 F. Supp. 3d 653 (E.D. Va. 2016) ........................................................... *passim*

*Lifestyle Investments, LLC v. Amicus Therapeutics, Inc.*,
   2016 WL 3032684 (D.N.J. May 26, 2016) ............................................................7

*Micholle v. Ophthotech Corp.*,
   2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ...........................................................9

*Nager v. Websecure, Inc.*,
   1997 WL 773717 (D. Mass. Nov. 26, 1997) ............................................................5

*Naiditch v. Applied Micro Circuits Corp.*,
   2001 WL 1659115 (S.D. Cal. Nov. 5, 2001) ..........................................................19

*Nasin v. Hongli Clean Energy Techs. Corp.*,
   2017 WL 5598214 (D.N.J. Nov. 21, 2017) ........................................................3, 5

*Phuong Ho v. NQ Mobile, Inc.*,
   2014 WL 1389636 (S.D.N.Y. Apr. 9, 2014) ............................................................7

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) .............................................................................9

*Piven v. Sykes Enters., Inc.*,
   137 F. Supp. 2d 1295 (M.D. Fla. 2000) .................................................................19

*Plaut v. Goldman Sachs Grp., Inc.*,
   2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ......................................................4, 5

*Ross v. Abercrombie & Fitch Co.*,
   2007 WL 895073 (S.D. Ohio Mar. 22, 2007) .........................................................8

*Smith v. Suprema Specialties*,
   206 F. Supp. 2d 627 (D.N.J. 2002) ........................................................................19

*Stengle v. Am. Ital. Pasta Co.*,
   2005 U.S. Dist. LEXIS 43816 (W.D. Mo. Dec. 19, 2005) ................................14, 16

*Teran v. Subaye, Inc.*,
   2011 WL 4357362 (S.D.N.Y. Sept. 16, 2011) ..................................................6, 7, 9

- iv -

Page

*Thompson v. Shaw Grp., Inc.*,
  2004 WL 2988503 (E.D. La. Dec. 14, 2004)........................................................10, 14, 15, 17

*Tomaszewski v. Trevena, Inc.*,
  383 F. Supp. 3d 409 (E.D. Pa. 2019) .....................................................................................5

*Tsirekidze v. Syntax-Brillian Corp.*,
  2008 WL 942273 (D. Ariz. Apr. 7, 2008) .............................................................................20

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008).....................................................................................9

*Williams v. Taylor*,
  529 U.S. 362 (2000).................................................................................................................18

*Zaken v. Boerer*,
  964 F.2d 1319 (2d Cir. 1992)...................................................................................................5

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78u-4(a)(2)(A)...........................................................................................................................4
  §78u-4(a)(3)(A)(i)(II) ................................................................................................................4
  §78u-4(a)(2)(A)(v)....................................................................................................................11
  §78u-4(a)(3)(B)..........................................................................................................................10
  §78u-4(a)(3)(B)(iii)(I).............................................................................................................17
  §78u-4(a)(3)(B)(iii)(I)(bb)........................................................................................................3
  §78u-4(a)(3)(B)(iii)(I)(cc)........................................................................................................3
  §78u-4(a)(3)(B)(iii)(II) ..................................................................................................3, 10, 20
  §78u-4(a)(3)(B)(v)....................................................................................................................10
  §78u-4(a)(3)(B)(vi) ........................................................................................................ *passim*

Federal Rules of Civil Procedure
  Rule 12(b)(6)...............................................................................................................................7
  Rule 23 ...................................................................................................................................3, 20

## LEGISLATIVE HISTORY

H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995
  U.S.C.C.A.N. 730 ....................................................................................................................18

## SECONDARY AUTHORITIES

  5 MOORE'S FEDERAL PRACTICE §23.191[3][d] .......................................................................16

I.      **INTRODUCTION**

Of the four original movants seeking appointment as lead plaintiff in this case pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), two movants (Public Employees' Retirement System of Mississippi and Valentin Verkhovsky) withdrew,[1] leaving two remaining motions: the Israeli Investor Group and the Labourers' Pension Fund of Central and Eastern Canada.[2]  Pursuant to the PSLRA's express criteria, only the Canadian Labourers' Pension Fund qualifies for appointment as lead plaintiff.

While the Israeli Investor Group claims to have suffered $10.3 million in losses on their investment in International Flavors & Fragrances Inc. stock during the Class Period, the Israeli Investor Group is ineligible for appointment because:

- Their purported financial interest is not properly before the Court because ***none*** of the six entities' Certifications timely complied with the PSLRA;

- The Israeli Investor Group is neither cohesive nor adequate as the "evidence" the Group proffered consists of an anonymous Joint Declaration and multiple layers of hearsay which is entitled to zero evidentiary weight; and

---

[1]   MPERS' Notice of Withdrawal is contradictory as the first paragraph expressly withdrew the motion while the second paragraph stated that MPERS "qualifies for appointment . . . and is ready to serve."  *See* ECF No. 31.  Mr. Verkhovsky's Withdrawal is similarly contradictory.  *See* ECF No. 32 (withdrawing but "stand[ing] ready, willing and able to serve").  Because these movants appear to be hedging their withdrawals, the Canadian Labourers' Pension Fund opposes both motions herein out of an abundance of caution.  *See infra* §II.

[2]   The Israeli Investors Group is comprised of industry competitors Menora (which is comprised of three distinct entities: Menora Mivtachim Insurance Ltd., Menora Mivtachim Pensions and Gemel Ltd., Menora Mivtachim, and the Federation of Engineers Provident Fund Management Ltd.) and CLAL (which is also comprised of three distinct entities: Clal Insurance Company Ltd., Clal Pension and Provident Ltd., and Atudot Pension Fund for Employees and Independent Workers).  *See* ECF No. 22 at 1.

4848-8651-1787.v1

- Even assuming the Court could consider their motion, "coordination problems inherent within the [six] distinct entities involved here, which are competitors, will outweigh whatever gains are to be had through the grouping."[3]

In short, the Israeli Investor Group has not timely evidenced its financial interest or adequacy – the threshold statutory requirements necessary to be eligible for appointment as lead plaintiff. Consequently, the Court cannot consider the Israeli Investor Group's motion.

Similarly, MPERS cannot trigger the presumption as it is presumptively barred from serving as lead plaintiff in this case by the PSLRA's Five-in-Three Provision, which limits service as lead plaintiff to "**no more than 5** securities class actions . . . during any 3-year period."[4]  Indeed, MPERS has served as lead plaintiff in **eighteen** cases since 2016, and is seeking appointment in two more cases (including this one).  MPERS' motion omits any reference to this provision even though it is MPERS' burden to "demonstrate[] why it should be excepted from the ban against frequent litigants."[5]  No exception consistent with the statute exists here.  As such, MPERS' motion should be denied.

Finally, Valentin Verkhovsky suffered a smaller loss than the Canadian Labourers' Pension Fund and cannot trigger the presumption unless he can first rebut the presumption in the Canadian Labourers' Pension Fund's favor.  He has not done so.  *See* ECF No. 32 (withdrawing motion and making no arguments against the Canadian Labourers' Pension Fund).  As such, his motion should be denied.

---

[3]    *See Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *9 (N.D. Cal. Aug. 22, 2008) (denying two motions by two groups of Israeli entities, including one by CLAL, represented by Pomerantz).  All emphasis is added and all citations are omitted unless otherwise indicated.

[4]    15 U.S.C. §78u-4(a)(3)(B)(vi).

[5]    *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1156-57 (N.D. Cal. 1999).

By contrast, the Canadian Labourers' Pension Fund is an institutional investor that timely evidenced its substantial loss, easily meets the Rule 23 requirements, selected qualified counsel, and is not subject to the Five-in-Three Provision. Its motion should be granted.

## II.    ARGUMENT

The goal of the PSLRA's lead plaintiff provision "is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity … to function as an ***active*** agent for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001). In this regard, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" ***and*** "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb)-(cc). Additionally, the PSLRA's Five-in-Three Provision prevents movants from monopolizing the lead plaintiff role, presumptively limiting service as lead plaintiff to no more than five securities class action cases during any three-year period. *See* 15 U.S.C. §78u-4(a)(3)(B)(vi).

The only movant before the Court that meets ***all*** of these criteria is the Canadian Labourers' Pension Fund.

### A.    The Israeli Investor Group Does Not Trigger the PSLRA Presumption

While the Israeli Investor Group claims to have suffered the largest financial loss, the six-member Israeli Investor Group is subject to unique defenses.[6] "A movant must move the court to be appointed lead plaintiff of the purported class 'not later than 60 days after the date on which the notice is published.'" *Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214, at *3 (D.N.J.

---

[6]    *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

4848-8651-1787.v1

Nov. 21, 2017) (quoting 15 U.S.C. §78u-4(a)(3)(A)(i)(II)).  "In doing so, the PSLRA requires each

movant to submit a sworn certification attesting to the required six declarations," which must be

submitted within the 60-day lead plaintiff filing deadline.  *Id.* (noting that "deficient certifications" –

even those corrected "after the 60-day deadline" – "subject [movants] to a unique defense that

renders them 'incapable of adequately representing the class' and, as a result, they are not the

presumptively most adequate lead plaintiff").

Here, while the Israeli Investor Group entities did provide PSLRA Certifications, none

comply with the PSLRA's express (and most basic) requirement that the certification "***shall*** be

personally signed."  15 U.S.C. §78u-4(a)(2)(A).  Instead, each Certification bears a stamp.  *See* ECF

No. 23-4.  There are no personal signatures, let alone titles or positions provided for the names to

independently ascertain authority to bind these six distinct entities.  Worse, the name of one

signatory is represented as both Sha**y** Kompel (at the beginning of the Certification) and Sha**i**

Kompel (at the end of the Certification).  *Id*.  Obviously both cannot be correct, yet the stamp was

affixed without correcting the erroneous spelling – ***three times*** – and done so under penalty of

perjury.  *Id.*  Courts have found certification errors just like these – even if corrected after the 60-day

statutory deadline – to be disqualifying.  *See Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774,

at *5 (S.D.N.Y. Sept. 19, 2019) (denying lead plaintiff motion filed by Israeli entity represented by

Pomerantz because "certification errors in [its] submissions" were not "clerical error[s]" or "'minor

defect[s]'" as counsel claimed but "'speak[] to a level of carelessness'").  Indeed, the failure to

satisfy such basic requirements while asking the Court to appoint them to oversee this important and

complex litigation should "cause [the Court] 'to doubt whether [the Group] possesses the necessary

adequacy and sophistication to be lead plaintiff.'"  *Id.*; *Irving Firemen's Relief and Ret. Fund v.*

*Tesco PLC*, 2015 WL 1345931, at *3 (S.D.N.Y. Mar. 19, 2015) (finding that court's inability to

- 4 -

verify movant's financial interest due to "discrepancies" in certification "'undermines [its] adequacy'").[7]   Consequently, the Israeli Investor Group has not timely evidenced its financial interest in the relief sought by the class, and the Court is precluded from considering its motion.  *See Nasin*, 2017 WL 5598214, at *3.[8]

Beyond the fundamental Certification errors that render the Israeli Investor Group's financial interest unsubstantiated, the Joint Declaration is likewise invalid.  Indeed, while the Joint Declaration says "We, the undersigned," it conspicuously fails to identify who the undersigned are, let alone their titles or authority to so declare.  *See* ECF No. 23-2.[9]  Obviously, anonymous declarations have no evidentiary value.  *See Zaken v. Boerer*, 964 F.2d 1319, 1323-24 (2d Cir. 1992)

---

[7]   *See also Tomaszewski v. Trevena, Inc*., 383 F. Supp. 3d 409, 414-15 (E.D. Pa. 2019) (finding that "[s]worn declarations are integral to the PSLRA process" and "the errors in Erenoglu's sworn statements amount to a substantial degree of carelessness and raise doubt as to whether he will fairly and adequately represent the best interests of the class" "[p]articularly given that these errors were made at the outset of the case"); *Nasin*, 2017 WL 5598214, at *3 (rejecting movant's contention that "the missing language in the PSLRA certifications as a technicality that was cured with its amended filing" because "it still stands that such filing was late and 'courts have rejected groups [for lead plaintiff] due to untimely filing of either the certification of alleged losses or the complaint'") (quoting *In re Able Labs. Sec. Litig*., 425 F. Supp. 2d 562, 570 (D.N.J. 2006) (citing cases)); *Nager v. Websecure, Inc*., 1997 WL 773717, at *1 n.1 (D. Mass. Nov. 26, 1997) ("The inaccuracy [in the certification] may be explainable, but it casts sufficient doubt on Mr. Renzer's adequacy as a representative plaintiff that he should be excluded from the group appointed to serve as lead plaintiffs.").

[8]   The Israeli Investor Group's counsel (and Menora) in particular cannot claim ignorance of the importance of filing a timely and accurate certification given that the accuracy of Menora's certification was challenged at the class certification stage in *Comverse*  – one of the cases Menora highlights in the Joint Declaration.  *See* ECF No. 23-2 at ¶5; *In re Comverse Tech., Inc. Sec. Litig.*, No. 1:06-cv-01825-NGG-RER, ECF No. 224 at 21-23 (E.D.N.Y. Jan. 16, 2009); *see also Plaut*, 2019 WL 4512774, at *5 (denying lead plaintiff motion filed by Israeli entity represented by Pomerantz because of "certification errors in [its] submissions").

[9]   It is also notable that while the Israeli Institutional Group entities (and counsel) may have (erroneously) perceived stamps to qualify as personal signatures for the Certifications, the Joint Declaration contains no stamps (let alone names).  This unexplained discrepancy between how the Certifications and Joint Declaration were executed casts further doubt on the Group's adequacy.

(holding that "without identification of the declarant, the statement . . . did not have a sufficient evidentiary foundation").  As such, the Israeli Investor Group's Joint Declaration is inadmissible evidence of the Group's adequacy (another express PSLRA requirement).  *See In re Enzymotec Ltd. Sec. Litig.*, 2015 WL 918535, at *3 (D.N.J. Mar. 3, 2015) ("3B's certification could be subject to attack because it provides no indication that its signer, Ami Baksis, is authorized to sign the certification on 3B's behalf.  Indeed, nowhere in 3B's certification does Mr. Baksis identify himself or provide any indication of his role within 3B.  3B dismisses EIG's argument that the failure to do so runs afoul of the PSLRA's requirements.  Of course, 3B is correct that the PSLRA does not explicitly require the signer of a certification on behalf of a corporation to identify his/her position within the company and provide a basis for his/her signing authority.  It seems plain to this Court, however, that any proper certification would include such basic information.").

Even if the declarants had been identified and the Joint Declaration was admissible, the Declaration's substance does not comport with this Court's requirement that "a proposed group must 'proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs.'"  *Teran v. Subaye, Inc.*, 2011 WL 4357362, at *3 (S.D.N.Y. Sept. 16, 2011) (Buchwald, J.) (further recognizing that "courts in this District 'do not hesitate to deny a proposed group's motion . . . if the movants have not provided a sufficient evidentiary basis for aggregation or if the court otherwise is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action'").[10]  The Israeli Investor Group's Joint

---

[10]   The Israeli Investor Group's attempt to evidence a pre-litigation relationship based on their service as lead plaintiff in *In re Mellanox Techs., Ltd. Sec. Litig.*, 13-cv-04909 (N.D. Cal. 2013) is a red herring.  There were actually three lead plaintiffs in *Mellanox* (Menora, CLAL, and a third

- 6 -

Declaration here "expose[s] the lack of cohesiveness in the . . . Group by what [it] *fail[s]* to say." *Id.* at *4 (emphasis in original).

Menora and CLAL are competitors in the same industry – a complicating factor that is entirely glossed over in the Joint Declaration. *Compare* ECF No. 23-2 *with Eichenholtz*, 2008 WL 395289, at *9 (noting that Israeli entities comprising group "are competitors of others in the group" and "are likely to have different investment strategies and may be subject to unique defenses" and that "[t]hey have no[t] clarified how they will resolve their differences"). Just as the *Eichenholtz* court was right to be concerned, here, while Menora's Certification identifies additional non-U.S. transactions in Israeli common stock, CLAL's Certification does not – confirmation that Menora's investment strategy in fact diverges from CLAL's. This too is a concern as the Joint Declaration is silent as to how Menora's divergent investment strategy will impact the Group's ability to make litigation decisions, particularly since there are an even number of group members and they have not set forth any dispute resolution mechanism in the event of a decision-making deadlock. *See In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015) (rejecting a group in part because it had "no agreement in place regarding the resolution of disputes amongst themselves"); *Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc.*, 2015 WL 7018024, at *4 (S.D.N.Y. Nov. 12, 2015) (finding group of two institutions "do not have an adequate plan for cooperation, which weighs against their attempt to aggregate losses"); *Phuong Ho v. NQ Mobile, Inc.*, 2014 WL 1389636, at *5 (S.D.N.Y. Apr. 9, 2014) ("the mere promise that group members could call each other and develop voting mechanisms is not sufficient to show the cohesiveness necessary to achieve appointment as lead plaintiff"); *see also Lifestyle Investments, LLC v. Amicus*

---

entity, Eisenberg O. Management & Consulting Ltd.), who were appointed via an *uncontested stipulation* after all competing movants withdrew (*see* Exhibit 1 attached hereto), and the case was dismissed on a Rule 12(b)(6) motion before any class certification or discovery proceedings.

*Therapeutics, Inc.,* 2016 WL 3032684, at *6 (D.N.J. May 26, 2016) (denying group's motion wherein group "consisting of [six] entities [that] have not indicated how they will proceed in the event that their decision-makers become deadlocked by an even split in their voting" which "may create an untenable decision making process that may not adequately protect the putative class members"). *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 494-95 (D. Conn. 2017) ("Although the lack of a specific voting plan is not fatal to the ability of parties to operate as a group, it does not provide much comfort to a court that is already skeptical of the parties' relationship.").

Instead of addressing these practical concerns, the Joint Declaration contains myriad platitudes and conclusory statements like the Israeli Investor Group "decided to seek joint appointment" because they believe the case "is meritorious and should be led by dedicated and sophisticated institutional investors that are committed to maximizing the recovery on behalf of the class" and "they are like-minded institutional investors that suffered substantial losses" (ECF No. 23-2 at ¶4) – generic statements that any movant could make, but which do not provide any real rationale for the group itself. *See In re Tarragon Corp. Sec. Litig.*, 2007 WL 4302732, at *1 (S.D.N.Y. Dec. 6, 2007) ("While one might assume that each group member shares a common purpose or goal in obtaining a recovery in the lawsuit, the same may be said of any class member who does not opt out of the class."). Similarly, the Joint Declaration's anonymous declarants state that additional unidentified "in-house counsel . . participated in a joint conference call with Pomerantz whereby they discussed the merits of this action, the current status of the proceedings, and facilitating future communication." ECF No. 23-2 at ¶8. Even assuming the Court was willing to accept the multiple layers of (anonymous) hearsay embedded in this representation,[11] it lacks any

---

[11]   *See Ross v. Abercrombie & Fitch Co.*, 2007 WL 895073, at *3 (S.D. Ohio Mar. 22, 2007) ("[E]ven though the Court is willing to accept a single level of hearsay (e.g. the affidavit) the Nespole declaration is double hearsay. While the Court will not strike it from the record, it agrees

substance. *See Teran*, 2011 WL 4357362, at \*4 (noting that "while the declarations discuss the group's plans and intentions for the future, they are void of specifics and, most notably, say nothing about past activity save for a general statement that they have each been 'conferring' with counsel"); *Eichenholtz*, 2008 WL 3925289, at \*9 (rejecting Israeli group because "the constituent members of the Israeli Group have not shown how and when they were joined together, how they intend to conduct discovery or how they will coordinate litigation efforts and strategy" but rather "simply claim they are 'sophisticated institutional investors' with the 'capability and experience to oversee this litigation' and 'ample resources' that have 'significant interest in the outcome of this action'").[12]

Because the Israeli Investor Group's Certifications are facially invalid (and any subsequent amendment would be untimely), the Joint Declaration is anonymous and lacks any evidentiary weight, and the Group has not substantively evidenced its cohesion, the Israeli Investor Group has

---

with Dearborn that the affidavit essentially has no evidentiary value on the question of whether the Gianetti Group is sufficiently cohesive and has adopted sufficient procedures to insure that this litigation will not be 'lawyer-driven.'").

[12]   *See also Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) (denying group's motion because "[v]ague discussions of general communication protocols and status reports hashed out over preliminary conference calls do little to show the groups' involvement in the litigation"); *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at \*9 (S.D.N.Y. Mar. 13, 2018) (denying group's motion where declaration provided only "'conclusory assurances' that call into question whether it can manage this litigation effectively"); *Int'l Union*, 2015 WL 7018024, at \*4 ("conclusory assurances are precisely the types of statements that courts in this District have rejected as insufficient proof that a group of unrelated investors will be able to effectively manage the litigation"); *Galmi*, 302 F. Supp. 3d 485, 494-95 ("Conclusory statements such as 'each group member shares a common purpose or goal in obtaining a recovery in the lawsuit' are not evidence of a group's cohesiveness."); *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011) ("[A]lthough they have submitted a joint declaration stating that they have discussed 'protocols for managing the litigation' and 'have implemented communication procedures to enable [them] to confer via phone and/or email,' these conclusory assurances do not satisfy this Court that the Funds Group will be able to effectively manage this litigation."); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394-95 (S.D.N.Y. 2008) (rejecting group's "conclusory assertion" that it would be able to effectively manage the litigation).

not demonstrated its eligibility pursuant to the PSLRA's basic criteria for appointment as lead plaintiff.  Consequently, the Court should deny the Israeli Investor Group's motion.

### B.   MPERS Should Be Disqualified from Service as Lead Plaintiff for Violating the Five-in-Three Provision

In the event the Court does not accept MPERS' withdrawal, MPERS nonetheless does not qualify as the presumptive lead plaintiff as a movant must not run afoul of the PSLRA's presumptive bar prohibiting service as lead plaintiff in more than five securities class actions during any three-year period.  15 U.S.C. §78u-4(a)(3)(B)(iii)(II) and (v)-(vi).  Indeed, "the applicability of the statutory bar to [MPERS] obviates the relevance of the amount of its financial interest." *Thompson v. Shaw Grp., Inc.*, 2004 WL 2988503, at *7 (E.D. La. Dec. 14, 2004).  Consequently, regardless of its claimed financial interest, MPERS cannot serve as lead plaintiff in this case.  *See Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 WL 8804814, at *11-*16 (S.D. Fla. Dec. 6, 2018), *report and recommendation adopted*, 2018 WL 6978626 (S.D. Fla. Dec. 21, 2018) (disqualifying MPERS pursuant to Five-In-Three Provision, among other concerns).

Indeed, the Five-in-Three Provision is a distinct subpart (§vi) from the rebuttable presumption subpart (§iii) of the PSLRA's lead plaintiff provision (§78u-4(a)(3)(B)).  This independent statutory requirement for appointment plainly states, "a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, *in no more than 5* securities class actions brought as plaintiff class actions . . . during any 3-year period." 15 U.S.C. §78u-4(a)(3)(B)(vi).  By its own admission, MPERS has been appointed to serve as lead plaintiff in *nine* cases *filed* within the last three years *and is seeking appointment in two more cases*, including this one.  *See* ECF No. 15-3 at ¶¶5-7.[13]  In fact, MPERS has served as lead plaintiff in *eighteen* cases over the last three

---

[13]   While the PSLRA's Certification provision only requires an entity to "identif[y] any other action . . . *filed* during the 3-year period preceding the date on which the certification is signed by the

- 10 -

years (2016-current) and is seeking to serve in **two more cases** (including this one).  "Thus, under the terms of the Reform Act, [MPERS] is presumptively barred from serving as lead plaintiff." *Aronson*, 79 F. Supp. 2d at 1156.

To be clear, MPERS is one of the most frequent lead plaintiffs in securities cases since the PSLRA was enacted more than 20 years ago:

|   | *Case* | *Certification Signatory* |
|---|--------|---------------------------|
| 1. | *Seeks v. The Boeing Co.*, No. 1:19-cv-02394 (N.D. Ill.) [pending] | Jacqueline H. Ray Special Assistant Attorney General |
| 2. | *In re Nielsen Holdings plc Sec. Litig.*, No. 1:18-cv-07143 (S.D.N.Y.) | Jacqueline H. Ray Special Assistant Attorney General |
| 3. | *In re Facebook, Inc. Sec. Litig.*, No. 5:18-cv-01725 (N.D. Cal.) | Jacqueline H. Ray Special Assistant Attorney General |
| 4. | *In re WageWorks, Inc. Sec. Litig.* No. 4:18-cv-01523 (N.D. Cal.) | Jacqueline H. Ray Special Assistant Attorney General |
| 5. | *Wigginton v. Advance Auto Parts, Inc.*, No. 1:18-cv-00212 (D. Del.) | Jacqueline H. Ray Special Assistant Attorney General |
| 6. | *In re Acuity Brands, Inc. Sec. Litig.*, No. 1:18-cv-02140 (N.D. Ga.) | Jacqueline H. Ray Special Assistant Attorney General |

---

plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class," the Five-in-Three Provision is broader and presumptively bars service in "more than 5 securities class actions . . . during **any** 3-year period."  *Compare* 15 U.S.C. §78u-4(a)(2)(A)(v) *with* 15 U.S.C. §78u-4(a)(3)(B)(vi).  Thus, while MPERS' Certification is accurate as to the cases it has served in that were **filed** during the last three years – which nine cases alone violate the Five-in-Three Provision – it does not reveal the additional nine cases MPERS has **served** as lead plaintiff in during the three-year period between 2016 and now.

| | Case | Certification Signatory |
|---|---|---|
| 7. | *In re Dr. Reddy's Labs. Ltd. Sec. Litig.*, No. 3:17-cv-06436 (D.N.J.) | Jacqueline H. Ray Special Assistant Attorney General |
| 8. | *In re Roadrunner Transp. Sys., Inc. Sec. Litig.*, No. 2:17-cv-00144 (E.D. Wis.) | Jacqueline H. Ray Special Assistant Attorney General |
| 9. | *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728 (S.D.N.Y.) | Jacqueline H. Ray Special Assistant Attorney General |
| 10. | *Pub. Emps. Ret. Sys. of Miss. v. Treehouse Foods, Inc.*, No. 1:16-cv-10632 (N.D. Ill.) | S. Martin Millette, III Special Assistant Attorney General |
| 11. | *In re Stericycle, Inc. Sec. Litig.*, No. 1:16-cv-07145 (N.D. Ill.) | Jacqueline H. Ray Special Assistant Attorney General |
| 12. | *In re Banco Bradesco S.A. Sec. Litig.*, No. 1:16-cv-04155 (S.D.N.Y.) | Jacqueline H. Ray Special Assistant Attorney General |
| 13. | *3226701 Canada, Inc. v. Qualcomm, Inc.*, No. 3:15-cv-02678 (S.D. Cal.) | Jacqueline H. Ray Special Assistant Attorney General |
| 14. | *Salhuana v. Diamond Foods, Inc.*, No. 3:11-cv-05386 (N.D. Cal.) | George W. Neville Special Assistant Attorney General |
| 15. | *La. Mun. Police Emps. Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-00289 (D. Vt.) | S. Martin Millette, III Special Assistant Attorney General |
| 16. | *Bach v. Amedisys, Inc.*, No. 3:10-cv-00395 (M.D. La.)[14] | George W. Neville Special Assistant Attorney General |

---

[14]   While MPERS likely will retort that some of these cases settled, "the 5-in-3 rule is ***not*** confined to simply the number of ***presently*** active cases a party is serving as a lead plaintiff in, but applies to ***all*** cases (active or otherwise) the party in question has served as a lead plaintiff in the past three years." *Cunha v. Hansen Nat. Corp.*, 2009 WL 2029797, at *4 (C.D. Cal. July 13, 2009) (emphasis added and in original). "Nowhere in the statute suggest, much less does its language provide, that it

| | Case | Certification Signatory |
|---|---|---|
| 17. | *Hill v. State Street Corp.*, No. 1:09-cv-12146 (D. Mass.) | George W. Neville Special Assistant Attorney General |
| 18. | *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, No. 1:08-cv-08093 (S.D.N.Y.) | George W. Neville Special Assistant Attorney General |
| 19. | *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 2:05-cv-02367 (D.N.J.) | Geoffrey Morgan Special Assistant Attorney General (declaration signatory) |

It is axiomatic that the "larger the number of cases being directed by a single institutional investor, the less likely it is [the PSLRA's] purposes are being served." *In re Unumprovident Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 24633, at *21-*22 (E.D. Tenn. Nov. 6, 2003); *Aronson*, 79 F. Supp. 2d at 1156 (recognizing that Congress "desired to increase client control over plaintiff's counsel, and allowing simultaneous prosecution of six securities actions is inconsistent with that goal").[15] As such, district courts do not hesitate to exercise their discretion in declining to ignore the presumptive bar when, like here, there are other qualified institutional investors with significant

---

is limited [to active cases], and with good reason." *Id.* "Even once a case has been settled or finally adjudicated the lead plaintiff still remains tasked with a host of administrative duties." *Id.* Indeed, many of MPERS' settled cases continued to have activity for years thereafter as the settlement was administered. "In short, the ending of the formal case does not end the lead plaintiff's responsibilities to or for the class . . . it was appointed to represent." *Id.* For example, while *Bach v. Amedisys, Inc.*, received final approval of a settlement in December 2017, the court did not approve distribution of the settlement funds until January 2019.

[15]  *See also In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 457 (S.D. Tex. 2002) (recognizing that while "involvement in numerous other securities fraud [cases], both as Lead Plaintiff and class participant, may demonstrate valuable experience and quality leadership, it also means fractured attention and resources with respect to this suit"); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 822 (N.D. Ohio 1999) (recognizing that "an institutional investor that is ***simultaneously*** involved in one or more other securities class actions would have fewer resources available and be less able to police its attorney's conduct") (emphasis in original).

losses that can serve as lead plaintiff. *See Cambridge Ret. Sys.*, 2018 WL 8804814, at \*16; *Aronson*, 79 F. Supp. 2d at 1156-57; *Cunha*, 2009 WL 2029797, at \*7.[16]

Indeed, the PSLRA's Five-in-Three Provision exists for situations like this, in which a movant like MPERS inexplicably continues to seek appointment as lead plaintiff with such regularity that it has now served as lead plaintiff in *eighteen* federal securities cases and is seeking to serve as lead plaintiff in *two additional cases* (including this one) – *all within a three-year period*. *See Cambridge Ret. Sys.*, 2018 WL 8804814, at \*16 (finding MPERS is "subject to the PSLRA's restriction"); *Craig*, 2017 WL 4768566, at \*4 (disqualifying institution that "sought to serve as lead [plaintiff] in *13* SEC class actions . . . [and] was appointed Lead Plaintiff in *8* of those cases"); *Knurr*, 220 F. Supp. 3d at 658 (disqualifying institution that "by its own admission, served as lead plaintiff in *at least 16* securities class actions in the last three years").[17]

---

[16]   *See also Craig v. CenturyLink Inc.*, 2017 WL 4768566, at \*4-\*5 (W.D. La. Oct. 20, 2017) (finding institution "should be disqualified" pursuant to the Five-in-Three Provision); *Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653, 663 (E.D. Va. 2016) ("there is simply no reason to exempt [institution] from the Five-in-Three Provision when [another institution] is fully qualified to serve as lead plaintiff"); *Stengle v. Am. Ital. Pasta Co.*, 2005 U.S. Dist. LEXIS 43816, at \*20 (W.D. Mo. Dec. 19, 2005) ("the Court should not lightly appoint a professional plaintiff, and in this case there is no need to do so" as there "are several other investors who can adequately represent the class"); *Unumprovident*, 2003 U.S. Dist. LEXIS 24633, at \*23 (finding "no justification for granting an exception to a party which has so significantly exceeded the limitations of the professional plaintiff rule, at least where a viable alternative is available which would be just as, if not more, consistent with the purposes underlying the PSLRA"); *Enron*, 206 F.R.D. at 457 (declining to waive application of presumptive bar to candidate in part because "there are other competent and qualified institutional applicants").

[17]   *See also Cunha*, 2009 WL 2029797, at \*4 (disqualifying institution that served "as lead plaintiff in *8* cases in the past 3 years, which is well beyond the maximum limit placed by the PSLRA"); *Stengle*, 2005 U.S. Dist. LEXIS 43816, at \*19-\*20 (disqualifying institution that was "currently serving as a lead plaintiff in *at least six* actions"); *In re Alamosa Holdings, Inc. Sec. Litig.*, 2004 WL 578439, at \*1 (N.D. Tex. Mar. 4, 2004) (disqualifying institution that "served as class representative in *five* class actions within the last three years and is also seeking to serve in a *sixth*"); *Thompson*, 2004 WL 2988503, at \*7 (disqualifying institution because "there is a risk of overstretch where [the fund] would be directing a total of *eight* concurrent lawsuits"); *Unumprovident*, 2003 U.S. Dist. LEXIS 24633, at \*22 (disqualifying institution that had served in *thirteen* cases); *Chiaretti v.*

- 14 -

Importantly, the PSLRA "places the burden on the [presumptively barred institution] to demonstrate why the bar should not be applied." *Telxon*, 67 F. Supp. 2d at 820; *Unumprovident*, 2003 U.S. Dist. LEXIS 24633, at *20 (same); *Aronson*, 79 F. Supp. 2d at 1156-57 (recognizing that institutional investor "has not demonstrated why it should be excepted from the ban against frequent litigants"). And, while the PSLRA grants district courts discretion to lift the presumptive bar, that discretion is circumscribed to instances that are "consistent with the purposes" of the PSLRA. 15 U.S.C. §78u-4(a)(3)(B)(vi). Congress enacted the PSLRA to "increase client control over plaintiff's counsel, and allowing simultaneous prosecution of six securities actions is inconsistent with that goal." *Aronson*, 79 F. Supp. 2d at 1156; *Chiaretti*, 2003 U.S. Dist. LEXIS 25264, at *5 (same); *see also Thompson*, 2004 WL 2988503, at *7 ("Although the legislative history appears to favor institutional investors, a policy of equal force is the general prevention of over-representation regardless of the plaintiff's status.").

It is no answer that the presumptive bar does not apply to MPERS because the PSLRA's legislative history indicates that a statutory purpose was to encourage institutions to serve as lead plaintiff. First, the Canadian Labourers' Pension Fund is an institutional investor, so that purpose will still be satisfied when the Court applies the provision to MPERS. Second, if "Congress had intended to grant a blanket exemption from operation of the [PSLRA] to institutional investors . . . it could easily have [done so]." *Telxon*, 67 F. Supp. 2d at 820, 821 ("[t]he statute is the law, not what the Conference Committee says the statute means"). Congress chose ***not*** to do so. *See* 15 U.S.C.

---

*Orthodontic Ctrs. of Am., Inc.*, 2003 U.S. Dist. LEXIS 25264, at *6 (E.D. La. Aug. 28, 2003) (disqualifying institution because its "general counsel currently oversees *at least six* large securities class actions"); *Enron*, 206 F.R.D. at 457 n.33 (disqualifying institution that "moved for appointment as Lead Plaintiff in ***thirteen*** [cases and] served as lead plaintiff in ***nine***"); *Aronson*, 79 F. Supp. 2d at 1156 (disqualifying institution "'serving as a lead plaintiff or co-lead plaintiff in *six* such actions'"); *Telxon*, 67 F. Supp. 2d at 819-22 (holding that pension fund "cannot serve as lead plaintiff" because it "has served as lead plaintiff in ***five*** securities class actions").

§78u-4(a)(3)(B)(vi); *Cambridge Ret. Sys.*, 2018 WL 8804814, at *12 ("The statutory restriction at issue includes no exemption for institutional investors.").[18]  Third, "Congress enacts statutes, not purposes, and courts may not depart from the statutory text because they believe some other arrangement would better serve the legislative goals."  *In re Cavanaugh*, 306 F.3d 726, 731-32 (9th Cir. 2002).  Attempts "to use the Conference Report to manufacture an ambiguity in the text of the PSLRA" are unavailing because "Congress enacts, and the President signs, statutes – not conference reports," and the "'mental processes' of legislators, even if formalized in a committee report, are unpersuasive in light of the fact that the Five-in-Three Provision plainly contains no exemption for institutional investors."  *Knurr*, 220 F. Supp. 3d at 661 (quoting *Gemsco, Inc., v. Walling*, 324 U.S. 244, 260 (1945) ("The plain words and meaning of a statute cannot be overcome by a legislative history which, through strained processes of deduction from events of wholly ambiguous significance, may furnish dubious bases for inference in every direction.")); *see generally Epic Sys. Corp. v. Lewis*, _ U.S. _, 138 S. Ct. 1612, 1631 (2018) ("[L]egislative history is not the law. 'It is the business of Congress to sum up its own debates in its legislation,' and once it enacts a statute '"[w]e do not inquire what the legislature meant; we ask only what the statute means."'").

In fact, not only does the statute ***not*** contain an exemption for institutional investors, it contains language that ***only*** applies to institutional investors: "a person may be a lead plaintiff, or an ***officer, director, or fiduciary*** of a lead plaintiff, in no more than 5 securities class actions."

---

[18]   *See also Knurr*, 220 F. Supp. 3d at 661 (same); *Cunha*, 2009 WL 2029797, at *4 (same); *Stengle*, 2005 U.S. Dist. LEXIS 43816, at *20 (same); *Unumprovident*, 2003 U.S. Dist. LEXIS 24633, at *15 (same); *Aronson*, 79 F. Supp. 2d at 1156 (same); *Telxon*, 67 F. Supp. 2d at 822 (same); 5 MOORE'S FEDERAL PRACTICE §23.191[3][d] ("the statute does not create a blanket exception for institutional investors").

15 U.S.C. §78u-4(a)(3)(B)(vi).[19]  This is particularly true in MPERS' case given anomalous features of Mississippi law providing that Attorney General Hood – *not MPERS* – makes all decisions regarding the prosecution and resolution of this case.[20]  Moreover, Jacqueline H. Ray, Mississippi's Special Assistant Attorney General here, is plainly an "officer, director, or fiduciary" of MPERS, and is individually barred by the statute as she has signed *twelve* of MPERS' certifications in the cases MPERS has served or is seeking to serve as lead plaintiff in since 2016.  *See Chiaretti*, 2003 U.S. Dist. LEXIS 25264, at *6 ("LSERS' general counsel currently oversees at least six large securities class actions and serves as general counsel for two large pension funds.  He falls within the clear cautioning instruction of the Act."); *Thompson*, 2004 WL 2988503, at *6 (disqualifying institution where its "in-house counsel, is currently directing seven securities fraud class actions").  Indeed, "[i]f the [Attorney General and Special Assistant Attorney General] were not a 'fiduciary' as [that] term is commonly understood, it would strain reason to say who is."  *Chiaretti*, 2003 U.S. Dist. LEXIS 25264, at *6 n.3.  Thus, the inclusion of this specific language that only applies to

---

[19]   MPERS will likely emphasize one decision that found ambiguity in the statute based on the fact that "[n]owhere does the statute define 'person,'" and "the term, 'person,' as used in [the PSLRA] does not lend itself to a clear understanding that institutional investors . . . are necessarily subject to the 5-and-3 cap."  *In re Extreme Networks Inc. Sec. Litig.*, 2016 WL 3519283, at *5 (N.D. Cal. June 28, 2016).  That distinction is plainly flawed as "under the Dictionary Act, the word 'person' in the statute is defined to include 'corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals,' unless 'the context indicates otherwise.'"  *Knurr*, 220 F. Supp. 3d at 660.  And, the PSLRA does not indicate otherwise, as it uses the word "person" throughout the statute, including to define who is eligible to serve as lead plaintiff, *i.e.*, a "person or group of persons."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Thus, "if 'person' in § 78u-4(a)(B)(iii)(I) includes institutional investors, then it follows that the word 'person' in the Five-in-Three Provision should also include institutional investors."  *Knurr*, 220 F. Supp. 3d at 660-61 (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) ("[I]dentical words used in different parts of the same statute are generally presumed to have the same meaning . . . .")).

[20]   *See* Exhibit 2 at 2, 4 (attached hereto) (explaining that the "Attorney General does not require the Mississippi Public Employees' Retirement System . . . to make decisions regarding the prosecution of such cases," and the Attorney General "exercises ultimate authority, and sometimes does act contrary to the opinion of the agency in question").

entities like institutional investors indicates that "[i]f Congress had intended to grant a blanket exemption from operation of the [PSLRA] to institutional investors . . . it could easily have [done so]." *Telxon*, 67 F. Supp. 2d at 821.  It did not.[21]

While the statutory text is clear, a snippet of legislative history admittedly recognizes that institutional investors "***may*** need to exceed this limitation."  H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734.  Yet, one need not resort to the legislative history to find permission to lift the presumptive bar: the PSLRA's text expressly provides such discretion when doing so is consistent with the purposes of the PSLRA.  *See* 15 U.S.C. §78u-4(a)(3)(B)(vi) ("[e]xcept as the court may otherwise permit, consistent with the purposes of this section").[22]  And, district courts recognize several obvious examples of when an institution may ***need*** to exceed the limit consistent with PSLRA's purposes, including:

- If the institution is "the only movant" (*Aronson*, 79 F. Supp. 2d at 1156; *Cunha*, 2009 WL 2029797, at *4);[23]

---

[21]   "It is . . . a cardinal principle of statutory construction that we must "'give effect, if possible, to every clause and word of a statute.'"  *Williams v. Taylor*, 529 U.S. 362, 404 (2000).  Given the regularity with which institutional investors seek to serve, and are appointed, as lead plaintiff in securities class actions, an entire section of the PSLRA would be rendered superfluous if district courts granted institutions a blanket exemption from the presumptive bar.  In fact, since the PSLRA's passage over twenty years ago, the Five-in-Three Provision has ***only*** been applied to institutional investors, not individual investors.

[22]   The "fact that the PSLRA affords courts discretion to waive the Five-in-Three Provision is further evidence that the Provision does not contain a flat exemption for institutional investors." *Knurr*, 220 F. Supp. 3d at 662 n.9.  "After all, if courts can exempt any proposed lead plaintiff from the Provision, then there would be little need to add an additional exemption for institutional investors."  *Id.*; *Telxon*, 67 F. Supp. 2d at 821 ("[T]he purported blanket exemption reflected in the Conference Report cannot be squared with the more limited grant of discretion contained in the statute itself.  It would turn the grant of discretion into a mandatory instruction ***requiring*** courts to excuse an institutional investor from the rule.") (emphasis in original).

[23]   *See In re Herley Indus. Inc. Sec. Litig.*, 2010 WL 176869, at *4 n.4 (E.D. Pa. Jan. 15, 2010) (lifting bar because movant was only available candidate and "uniquely positioned to serve as lead plaintiff").

4848-8651-1787.v1

- If the "other movants had accrued an even longer record of participation in securities litigation" (*Aronson*, 79 F. Supp. 2d at 1156);

- If the institution is "the only institutional investor seeking appointment as lead plaintiff" (*Knurr*, 220 F. Supp. 3d at 662; *Cunha*, 2009 WL 2029797, at *4; *Aronson*, 79 F. Supp. 2d at 1156);[24] or

- If the "other movants are not adequate candidates" (*Smith v. Suprema Specialties*, 206 F. Supp. 2d 627, 641 (D.N.J. 2002)).[25]

No such need exists here as the Canadian Labourers' Pension Fund is an institutional investor that suffered a substantial loss and is fully qualified to serve as lead plaintiff.  As such, MPERS cannot meet its burden to demonstrate why the PSLRA's presumptive bar should be lifted.

"Neither the PSLRA nor its legislative history express any congressional desire [that] institutional investors be permitted to dominate or monopolize the lead plaintiff role." *Unumprovident*, 2003 U.S. Dist. LEXIS 24633, at *23.  MPERS has far exceeded the PSLRA's limit, and continues to file lead plaintiff motions at a rapid enough pace that itself exceeds the statutory limit.  Because there is another institutional investor that suffered a substantial loss that is not subject to the presumptive bar, MPERS' motion should be denied.

---

[24]   *See In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1112 (N.D. Cal. 2001) (lifting bar because institution "is the only acceptable institutional investor"); *In re Network Assocs., Inc. Sec., Litig.*, 76 F. Supp. 2d 1017, 1030, 1044 n.6 (N.D. Cal. 1999) (lifting bar because "there is no alternative acceptable institutional candidate").

[25]   *See In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 454 (C.D. Cal. 2002) ("courts have waived the PSLRA's professional plaintiff restriction when there were no other suitable applicants for lead plaintiff"); *Naiditch v. Applied Micro Circuits Corp.*, 2001 WL 1659115, at *3 (S.D. Cal. Nov. 5, 2001) (lifting bar because alternative movants were small individual investors with no experience in managing a securities class action); *Piven v. Sykes Enters., Inc.*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000) (lifting bar because of "Westwind's inability to establish that it is a more adequate lead plaintiff").

- 19 -

### C.     Mr. Verkhovsky Has the Smallest Financial Interest and Cannot Trigger the Presumption

Mr. Verkhovsky – who withdrew his motion but "stand[s] ready, willing and able to serve as lead plaintiff" (ECF No. 32) – claims to have suffered a $3,543 loss (ECF No. 13-2) which is substantially smaller than the Canadian Labourers' Pension Fund's $943,411 loss.  As such, the Court cannot consider Mr. Verkhovsky's motion unless he rebuts the presumption in favor of the Canadian Labourers' Pension Fund. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  He has not done so. *See* ECF No. 32.  Consequently, his motion should be denied.

### D.     The Canadian Labourers' Pension Fund Is the Presumptive Lead Plaintiff Candidate

The Canadian Labourers' Pension Fund not only suffered a substantial, six-figure loss, it satisfies the Rule 23 requirements and is not subject to the PSLRA's presumptive bar on repeat litigants.  "[O]ther than pointing out its relatively low[er] financial stake in the litigation," it is unlikely that the other movants will make any argument against the Canadian Labourers' Pension Fund's appointment. *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *5 (D. Ariz. Apr. 7, 2008) (appointing pension fund as lead plaintiff despite the fact that it did not suffer the greatest financial interest because it "is the first [movant] to meet [the PSLRA's] standards").

## III.    CONCLUSION

The Israeli Investor Group has not met any of the PSLRA's express requirements for appointment as lead plaintiff due to several defects which preclude a finding of adequacy.  MPERS also cannot serve as lead plaintiff because it cannot meet its burden under the PSLRA's Five-in-Three Provision to lift the presumptive bar.  Mr. Verkhovsky suffered the smallest loss and has not rebutted the presumption in favor of the Canadian Labourers' Pension Fund's appointment.  Their motions should be denied.

DATED:  October 25, 2019                 Respectfully submitted,

                                         ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         SAMUEL H. RUDMAN
                                         DAVID A. ROSENFELD


                                                  *s/ David A. Rosenfeld*
                                         ─────────────────────────
                                              DAVID A. ROSENFELD

                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)
                                         srudman@rgrdlaw.com
                                         drosenfeld@rgrdlaw.com

                                         ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         DANIELLE S. MYERS
                                         MICHAEL ALBERT
                                         655 West Broadway, Suite 1900
                                         San Diego, CA  92101
                                         Telephone:  619/231-1058
                                         619/231-7423 (fax)
                                         dmyers@rgrdlaw.com
                                         malbert@rgrdlaw.com

                                         [Proposed] Lead Counsel for [Proposed] Lead
                                         Plaintiff

- 21 -

KOSKIE MINSKY LLP
MICHAEL MAZZUCA
20 Queen Street West
Suite 900, Box 52
Toronto, Ontario M5H 3R3
Telephone:  416/977-8353
416/977-3316 (fax)

Additional Counsel for [Proposed] Lead Plaintiff

4848-8651-1787.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on October 25, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ David A. Rosenfeld
DAVID A. ROSENFELD

ROBBINS GELLER RUDMAN
   & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:  drosenfeld@rgrdlaw.com

# Mailing Information for a Case 1:19-cv-07536-NRB Jansen v. International Flavors & Fragrances Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Roger Allen Cooper**
  racooper@cgsh.com,maofiling@cgsh.com

- **Meredith Eve Kotler**
  mkotler@cgsh.com,maofiling@cgsh.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Gregory Mark Nespole**
  gnespole@zlk.com,jtash@zlk.com

- **Lesley Frank Portnoy**
  LPortnoy@glancylaw.com,info@glancylaw.com,lesley-portnoy-3007@ecf.pacerpro.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Michael Arthur Toomey**
  mtoomey@barrack.com,mbonatara@barrack.com

- **Elizabeth Vicens**
  evicens@cgsh.com,maofiling@cgsh.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)